# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| SARA PERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:24-cv-1157 |
| | ) | |
| SEPHORA USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Sara Perry is suing her former employer, Sephora USA, Inc., for violating the Americans with Disabilities Act ("ADA") and the Family Medical Leave Act ("FMLA"). (Doc. No. 15). She claims Sephora violated the ADA in four ways when it: (1) failed to reasonably accommodate her anxiety and obsessive-compulsive disorder, (<u>id.</u> ¶¶ 79-91); (2) discriminated against her because of her disability, (<u>id.</u> ¶¶ 92-105); (3) created a hostile work environment for people with mental health disorders, (<u>id.</u>); and (4) retaliated against her after she requested leave based on her mental health, (<u>id.</u>). She also claims that Sephora violated the FMLA by interfering with her leave and by retaliating against her for requesting leave. (<u>Id.</u> ¶¶ 106-116).

Sephora moves to dismiss all of Ms. Perry's claims. (Doc. No. 17). Sephora argues that her ADA claims should be dismissed because: (1) the Amended Complaint exceeds the scope of her EEOC Charge of Discrimiation on her failure-to-accommodate and retaliation claims, so those claims are unexhausted; (2) her hostile work environmental and retaliation claims are untimely; (3) she never sought an objectively reasonable accommodation; (4) she failed to allege harassment that was sufficiently severe or pervasive to alter her conditions of employment; and (5) she did not suffer an adverse employment action because she resigned. (Doc. No. 17 at 3-10). Sephora also argues Ms. Perry's FMLA claims should be dismissed because: (1) she has pleaded no facts

showing that Sephora interfered with her FMLA leave; and (2) she cannot show retaliation because she was not discharged, she resigned.  (Id. at 10-13).

Ms. Perry opposes dismissal of her claims because: (1) her failure-to-accommodate and retaliation claims are reasonably related to the facts she included in her EEOC charge and are therefore exhausted; (2) her accommodation request was reasonable because she only asked for certain considerations to help ease her anxiety at work; (3) she was retaliated against when Sephora promoted another person over her, which is an adverse employment action; and (4) she alleged severe and pervasive harassment including her manager calling another employee "crazy".  (Doc. No. 22).

Now that the matter has been fully briefed, the Court will grant Sephora's motion to dismiss for the reasons set forth below.

## I.    BACKGROUND[1]

Sephora operates four stores in the Nashville area and approximately six additional stores in other parts of Tennessee.  (Doc. No. 15 ¶ 21).  Each store has a manager and one or two assistant manager(s), and multiple stores in a particular area are overseen by "district managers" and "regional managers".  (Id. ¶¶ 22, 29).

Ms. Perry worked for Sephora at its Cool Springs and Opry Mills locations.  (Id. ¶ 13). She began working at Sephora as a part-time cashier in 2015 and was ultimately promoted to assistant store manager.  (Id. ¶ 15).  Ms. Perry served as "acting store manager" of the Opry Mills store for two months in 2022, (id. ¶ 19), and afterwards she told her district manager, Brittany Bates, that she would like to be considered for a store manager position should one become

---

[1] These facts are derived from the Amended Complaint, and are accepted as true, as they must be at this stage.  See Parrino v. Price, 869 F.3d 392, 397 (6th Cir. 2017).

2

available.  (Id. ¶ 20).  District manager Bates oversaw all Sephora stores in Tennessee and Kentucky.  (Id. ¶ 24).

In 2021, Ms. Perry was diagnosed with acute anxiety and obsessive-compulsive disorder.  (Id. ¶ 32).  Initially, her condition was well-managed with therapy and medication; however, in 2022, her condition worsened, and her psychiatrist diagnosed her with "adjustment disorder".  (Id. ¶ 34).  Ms. Perry told her store manager, Stacie Werfel, about her condition (the Amended Complaint does not allege when this conversation took place).  (Id. ¶ 35).  After receiving her new diagnosis, Ms. Perry began to work with Sephora's human resources department to get approval for a leave of absence.  (Id. ¶ 36).  Sephora approved Ms. Perry for disability leave and short-term disability, which commenced on December 12, 2022.  (Id. ¶¶ 37-38).

Ms. Perry alleges that before she went on FMLA leave, Store Manager Werfel "threatened her to discourage her from taking leave."  (Id. ¶ 39).  Ms. Werfel allegedly told Ms. Perry that if she went on leave "the court system would see that she can't handle working and will take her children away."  (Id. ¶ 40).  Ms. Werfel also allegedly said that Ms. Perry's disability was not severe enough to warrant leave because she never "flipped out on an employee" or fired someone.  (Id. ¶ 41).

Ms. Perry specifically alleges that she witnessed Ms. Werfel mocking another store manager because she had a mental disability.  (Id. ¶¶ 56-58).  Allegedly, Ms. Werfel called the other store manager "crazy" and said she had "mental health issues."  (Id.).  Ms. Perry claims Ms. Werfel told her that if she acted like that other store manager, she would be punished.  (Id. ¶ 59).

Despite discouragement from Ms. Werfel, Ms. Perry took her approved FMLA leave.  (Id. ¶ 61).  Approximately five weeks into that leave, Ms. Werfel texted Ms. Perry to tell her that one of Ms. Perry's trainees had received a store manager position.  (Id.).  When Ms. Perry returned

3

from FMLA leave, she "contacted Sephora Human Resources to tell Sephora [] that working with Bates and Werfel aggravated her disabling conditions because they were harassing her." (Id. ¶ 63). Ms. Perry did not see how she could return to work if she had to face "discrimination, bullying, and retaliation" from District Manager Bates and Store Manager Werfel. (Id. ¶ 64). Ms. Perry told a Sephora human resources official that she would resign. (Id. ¶ 66). That human resources official told Ms. Perry that she could withdraw her resignation, (id. ¶ 73); however, the Amended Complaint never alleges that Ms. Perry withdrew her resignation. Ms. Perry received a letter from Sephora on June 30, 2023, stating that her benefits had been terminated. (Id. ¶ 77).

## II. LEGAL STANDARDS

When assessing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), like the one filed by Defendants, the Court must accept the Complaint's factual allegations as true, draw all reasonable inferences in Plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018) (citing Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). To survive a motion to dismiss, the complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." Eidson v. State of Tenn. Dept. of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." Id.

## III. ANALYSIS

### A. ADA Claims

#### 1. Failure to Accommodate Claim

The ADA precludes employers from failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless

such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." Brumley v. United Parcel Serv., Inc., 909 F.3d 834, 839 (6th Cir. 2018) (quoting 42 U.S.C. § 12112(b)(5)(A)). Failure-to-accommodate claims must be proven by direct evidence. See Blanchet v. Charter Commc'ns, LLC, 27 F.4th 1221, 1227 (6th Cir. 2022); see also Withers v. Nashville Historic Cemetery Ass'n, LLC, 729 F. Supp. 3d 802, 814 (M.D. Tenn. 2024).

A plaintiff who requires an accommodation bears the burden of proposing an accommodation and showing that it "seems reasonable on its face." Blanchet, 27 F.4th at 1229. Thus, to establish a *prima facie* case for failure to accommodate, a plaintiff must show that "(1) she is disabled under the ADA; (2) she is otherwise qualified for the position, with or without a reasonable accommodation; (3) her employer knew or had reason to know of her disability; (4) she requested a reasonable accommodation; and (5) the employer failed to provide the reasonable accommodation." Aldini v. Kroger Co. of Mich., 628 F. App'x 347, 350 (6th Cir. 2015).

Here, the Amended Complaint describes Ms. Perry's requested accommodation as follows:

> Plaintiff contacted Sephora Human Resources to tell Sephora [] that working with Bates and Werfel aggravated her disabling conditions because they were harassing her. . . . Plaintiff saw no hope in being able to return to Sephora unless she could get help avoiding discrimination, bullying, and retaliation.

(Doc. No. 15 ¶¶ 63-64). Distilled to its essence, Ms. Perry did not want to work for her store manager, Ms. Werfel, or her district manager, Ms. Bates. But the ADA does not require a company, like Sephora, to reshuffle its management structure to accommodate a single employee's stress or anxiety. See Burdett–Foster v. Blue Cross Blue Shield of Michigan, 574 F. App'x. 672, 680 (6th Cir. 2014) (affirming summary judgment for employer on failure-to-accommodate claim where employer denied employee's request to report to a different supervisor); Weiler v. Household Fin.

Corp., 101 F.3d 519, 526 (7th Cir. 1996) ("Weiler's solution is that she return to work under a different supervisor. But that decision remains with the employer. In essence, Weiler asks us to allow her to establish the conditions of her employment, most notably, who will supervise her. Nothing in the ADA allows this shift in responsibility."); Wernick v. Federal Reserve Bank of New York, 91 F.3d 379, 384 (2d Cir. 1996) (failure to assign employee to work under different supervisor did not violate reasonable accommodation requirement of ADA and Rehabilitation Act; "Indeed, nothing in the law leads us to conclude that in enacting the disability acts, Congress intended to interfere with personnel decisions within an organizational hierarchy. Congress intended simply that disabled persons have the same opportunities available to them as are available to nondisabled persons.").[2] That is especially true where, as here, Ms. Perry not only asked to be supervised by a different store manager but also a different district manager. Based on Ms. Perry's own allegations, Ms. Bates oversaw all Tennessee and Kentucky stores, so to accommodate her requested accommodation, Sephora would have had to: (1) transfer Ms. Bates to a different district, or (2) allow Ms. Perry to be specially supervised by a district manager that had no oversight or responsibility over Tenneessee stores. This request is unreasonable on its face.

Importantly, the Amended Complaint contains no allegations that Ms. Perry requested that she be transferred to a different Sephora store or district. Correspondingly, she did not allege that there were vacancies she could have filled in other stores or districts. Although under certain circumstances a request by an employee to be transferred can be a reasonable accommodation, Ms.

---

[2] See also EEOC Enforcement Guidance, Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, No. 915.002, Answer to Question 33, available at http://www.eeoc.gov/policy/docs/accommodation.html (last visited August 26, 2025) ("An employer does not have to provide an employee with a new supervisor as a reasonable accommodation.").

Perry does not allege that she requested to be transferred.[3]  Instead, based on her own allegations, Ms. Perry wanted Sephora to transfer her district manager or store manager or to create a special chain of command for her.  (Doc. No. 15 ¶ 63) ("[W]orking with Bates and Werfel aggravated [Ms. Perry's] disabling conditions.).  In other words, Ms. Perry wanted Sephora to accommodate a personality conflict with her managers, not her disability.  Fricke v. E.I. Dupont Co., 219 F. App'x. 384, 389 (6th Cir. 2007) ("Personality conflicts, workplace stress, and being unable to work with a particular person or persons do not rise to the level of a 'disability' or inability to work for purposes of the ADA.").  Because the ADA does not require an employer to accommodate objectively unreasonable requests and Ms. Perry's request to work with different managers was unreasonable, her failure-to-accommodate claim fails on its face.

## 2. Discrimination Claim

Ms. Perry also alleged she was discharged because of her disability in violation of the ADA or, alternatively, she did not receive a promotion because of her disability.  To begin with, Ms. Perry has failed to plead "discriminatory discharge," because she admits that she resigned rather than being terminated. (Doc. No. 15 ¶ 66).  Moreover, the factual allegations in the Amended Complaint do not support a claim that Ms. Perry was "discriminated against by her employer to the point where a reasonable person in her position would have felt compelled to resign."  Green v. Brennan, 578 U.S. 547, 555 (2016).  Ms. Perry has not alleged an "abusive working environment," much less one that "became so intolerable that her resignation qualified as a fitting

---

[3] Coulson v. The Goodyear Tire & Rubber Co., 31 F. App'x. 851, 858 (6th Cir.2002) ("[A]lthough transfer can be a reasonable accommodation, under these circumstances it would not be. Coulson is seeking to force Goodyear to transfer him so that he will not be required to work with certain people.").

7

response." Pennsylvania State Police v. Suders, 542 U.S. 129, 134 (2004). Therefore, she has not alleged that she was constructively discharged.

Because Ms. Perry was not discharged (constructively or otherwise), the Court will only discuss her failure-to-promote theory.

### a. Direct Evidence

Direct evidence of discrimination establishes, on its face, that unlawful discrimination was at least a motivating factor in the employer's actions.[4] Kostic v. United Parcel Serv., Inc., 532 F. Supp. 3d 513, 527 (M.D. Tenn. 2021). Direct evidence is composed of "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor." Id. (citing EEOC v. Publix Super Markets, Inc., 481 F. Supp. 3d 684, 697 (M.D. Tenn. 2020)); see also Diebel v. L & H Res., LLC, 492 F. App'x 523, 526 (6th Cir. 2012) (when considering direct evidence, courts look for "evidence from the lips of [a decision-maker] proclaiming his or her ... animus."). In determining the materiality of allegedly discriminatory statements, courts should consider four factors: "(1) whether the statements were made by a

---

[4] For example, courts have found that: (1) a supervisor's alleged statement that she chose a particular candidate in order "to maintain racial balance" constituted direct evidence of discriminatory intent, see Taylor v. Board of Educ. of Memphis City Sch., 240 Fed. Appx. 717, 720 (6th Cir. 2007); (2) a supervisor's alleged statement that an Italian–American probationary employee was a "dirty wop" and that there were too many "dirty wops" working at the facility constituted direct evidence of national origin discrimination, and the supervisor's alleged statement that a 46 year old employee was "no spring chicken" and he would never be a supervisor because of his age was direct evidence of age discrimination, see DiCarlo v. Potter, 358 F.3d 408, 471 & 418 (6th Cir. 2004); (3) providing an employee who intended to return from medical leave with a letter that stated "given [that] you are unable to perform the tasks of your job, we have found it necessary to hire someone to fill the vacancy created by your need to take long term disability" and that "[d]ue to your long term disability we must terminate your employment" constituted direct evidence of disability discrimination under the ADA, see Coffman v. Robert J. Young Co., Inc., 871 F.Supp.2d 703, 709 & 713 (M.D. Tenn. 2012); and (4) statements made two months before termination decision that plaintiffs were "too old" and "needed to retire" were direct evidence of age discrimination, Brewer v. New Era, Inc., 564 F. App'x 834, 839 (6th Cir. 2014).

decision-maker ...; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the [adverse employment] act." Pelcha v. MW Bancorp, Inc., 988 F.3d 318, 325 (6th Cir. 2021). Establishing direct evidence of discrimination is a "high bar," and a plaintiff cannot rely on any inferences. Id.

Ms. Perry has alleged that her store manager, Ms. Werfel, called another store manager "crazy" and said that the other manager had "mental health issues." (Doc. 15 ¶¶ 57-58). Ms. Werfel warned Ms. Perry that "if she were ever to act like that other manager or if she even discussed mental health with other employees, she would be punished." (Id. ¶ 59). Even assuming these comments reveal Ms. Werfel's animus towards people with mental health disorders and are more than vague or isolated remarks, Ms. Perry has failed to allege that Ms. Werfel, a store manager herself, played any role in deciding who would be hired to manage another store. Because there are no allegations that Ms. Werfel's alleged animus influenced Sephora's decision on who would become a store manager, Ms. Perry has failed to plead direct evidence of disability discrimination.

### b. Circumstantial Evidence

To the extent Ms. Perry relies on circumstantial evidence to plead her failure-to-promote claim, the Court must use the familiar McDonnell Douglas burden shifting framework to assess this claim. See A.C. v. Shelby Cnty. Bd. of Educ., 711 F.3d 687, 697 (6th Cir. 2013).

To set forth a *prima facie* case for failure-to-promote, a plaintiff must show: (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and denied the promotion; and (4) other employees of similar qualifications who were not protected class members received promotions at the time that Plaintiff was denied a

promotion.  Roper v. City of Cincinnati Fire Dep't, 2025 WL 2173367, at *2 (S.D. Ohio July 31, 2025) (citing Brown v. State of Tenn., 693 F.2d 600, 603 (6th Cir. 1982)); see also Hrdlicka v. Gen. Motors, LLC, 63 F.4th 555, 566 (6th Cir. 2023).

Ms. Perry's failure-to-promote claims stumbles on at least two fronts.  First, she does not allege that she applied for the store manager vacancy.  Suggesting to your supervisor's supervisor that you would like to be considered for future store manager openings, (Doc. No. 15 ¶ 20), is not equivalent to applying for an actual vacancy.  Second, Ms. Perry fails to allege that Aaliyah Johnson—the person selected for the store manager position—was not in the protected class herself.[5]  (Id. ¶ 61).  In other words, if Ms. Johnson is also disabled, there can be no inference of disability discrimination.  See Fleming v. MaxMara USA, Inc., 371 F.App'x. 115, 117 (2d Cir. 2010) (finding no inference of discrimination where black female plaintiff alleged termination based on race discrimination but she was "replaced by another black female"); Rodriguez v. N.Y.C. Health & Hosps. Corp., No. 14-CV-4960, 2015 WL 5229850, at *5 (E.D.N.Y. Sept. 8, 2015) ("It is extremely difficult, if not practically impossible to establish discrimination where, as here, plaintiff was passed over so an employer can hire another member of plaintiff's same protected class.").

Because of these pleading failures, Ms. Perry has not stated a discrimination claim based on a failure-to-promote theory.

### 3.  Hostile Work Environment

For a plaintiff to state a hostile work environment claim under the ADA, she must demonstrate that: "(1) she was disabled; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment unreasonably interfered with her work

---

[5] The Court cannot infer someone's race or sex or whether they are abled or disabled. Those are facts that need to be pleaded.

performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures." Trepka v. Bd. of Educ., 28 F. App'x 455, 461 (6th Cir. 2002). The harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment," because "merely offensive" conduct does not satisfy these requirements. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).

Here, Ms. Perry cannot show that Ms. Werfel's off-hand remarks about another manager being "crazy" and having "mental health issues" was harassment "based on her disability." In fact, Ms. Perry has not even alleged that these comments were made after she told Ms. Werfel about her own diagnosis. The comments could not be based on Ms. Perry's disability if they preceded Ms. Werfel's knowledge of Ms. Perry's condition.

Moreover, these stray comments—while offensive—were not, standing alone, sufficiently severe or pervasive to alter to the conditions of Ms. Perry's employment. See Coulson v. The Goodyear Tire & Rubber Co., 31 F. App'x 851, 858 (6th Cir. 2002) (alleged name-calling and harassment of plaintiff who suffered major depression and other mental problems, including calling plaintiff "looney tune," "wacko" and "crazy," did not amount to a hostile work environment actionable under the ADA.); see also Wheeler v. Jackson Nat'l Life Ins. Co., 159 F. Supp. 3d 828, 859 (M.D. Tenn.), aff'd, 666 F. App'x 453 (6th Cir. 2016) and Hardenburg v. Dunham's Athleisure Corp., 963 F.Supp.2d 693, 708 (E.D.Mich.2013). Accordingly, Ms. Perry has failed to state a hostile-work-environment claim.

### 4. Retaliation Claim

The ADA provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Like with a discrimination claim, the McDonnell Douglas burden shifting framework applies to ADA retaliation claims. 411 U.S. 792 (1973). Therefore, to prove a *prima facie* case of retaliation, a plaintiff must show: "(1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." Gray v. State Farm Mut. Auto. Ins. Co., 2025 WL 2092378, at *3 (6th Cir. July 25, 2025); see also Rorrer v. City of Stow, 743 F.3d 1025, 1046 (6th Cir. 2014).

Here, the Court will assume that the first two elements of a retaliation claim are satisfied. However, Ms. Perry has not shown that her employer took an adverse employment action against her. As noted above, Sephora did not terminate Ms. Perry's employment, she quit. Although "failure to promote can constitute an adverse employment action that would support a plaintiff's retaliation claim[,]" AuBuchon v. Geithner, 743 F.3d 638, 643 (8th Cir. 2014), Ms. Perry has not alleged that she applied for the job in question. An employer does not retaliate against an employee by failing to offer them a job for which they never applied. Thus, Ms. Perry has not pleaded sufficient facts to establish the third element of an ADA retaliation claim.

But even if Ms. Perry had sufficiently alleged an adverse employment action, she also failed to establish a causal connection between the protected activity and the failure to promote. She appears to rely exclusively on temporal proximity. However, the Sixth Circuit has held that temporal proximity, standing alone, generally does not establish causation.[6] See Mickey v. Zeidler

---

[6] See also Kenney v. Aspen Techs., Inc., 965 F.3d 443, 449 (6th Cir. 2020) (holding that a "roughly 75-day delay between [the plaintiff's] protected activity and an adverse employment action is not, standing alone, a convincing case for proving causation and, therefore, that the plaintiff needed "to provide other indicia to support a causal connection") Tuttle v. Metro. Gov't of Nashville, 474 F.3d 307, 321 (6th Cir. 2007) (holding temporal proximity alone is not enough; however, temporal

Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008) ("[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality."). There are exceptions to this rule, however, when "the adverse employment action occurs "very close in time after an employer learns of a protected activity."[7] Seeger v. Cincinnati Bell Tel. Co., LLC, 681 F.3d 274, 284 (6th Cir. 2012) (quoting Mickey, 516 F.3d 516, 525 (6th Cir. 2008)). Although there are no bright-lines regarding timing, cases "indicate that the line should be drawn" somewhere around the ten-week mark."[8] Stein v. Atlas Indus., Inc., 730 F. App'x 313, 319 (6th Cir. 2018); see also Wyatt v. Nissan N. Am., Inc., 999 F.3d 400, 427 (6th Cir. 2021) (finding a "one-to two-month time lapse between the protected activities and the adverse actions suffices to establish a genuine issue as to causation.").

---

proximity of three months plus a threat from a supervisor shortly after the protected activity took place is sufficient to satisfy causation element); Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 737 (6th Cir. 2006) (similar).

[7] E.g., Montell v. Diversified Clinical Servs., Inc., 757 F.3d 497, 506 (6th Cir. 2014) (firing occurred one day after protected activity); Howington v. Quality Rest. Concepts, LLC, 298 F. App'x 436, 446–47 (6th Cir. 2008) (adverse action occurred two days after the employer learned of protected activity); McNett v. Hardin Cmty. Fed. Credit Union, 118 F. App'x. 960, 965 (6th Cir. 2004) (finding causation when "only 13 days" separated protected activity from adverse action, reasoning that an "employer's knowledge of the protected activity coupled with an adverse action occurring close in time can create an inference of causation where the particular circumstances strengthen the inference of causation"); DiCarlo v. Potter, 358 F.3d 408, 421 (6th Cir. 2004) (twenty-one day lapse between protected activity and adverse employer action fell within close temporal proximity).

[8] The Sixth Circuit has inconsistently applied the "very close in time" exception to the general rule that temporal proximity alone is insufficient to establish causation. For example, in Kenney, 965 F.3d at 449, the Sixth Circuit held that a 72-day gap was insufficient to establish causation; however, in Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 563 (6th Cir. 2004), the Sixth Circuit held that a three-month gap was sufficient to show a causal connection based on temporal proximity alone.

13

Here, Ms. Perry does not allege when the protected activity took place. She simply alleges that she "began to work with Sephora human resources to get approval for a leave of absence." (Doc. 15 ¶ 36). But where, as here, a plaintiff relies exclusively on temporal proximity as the only evidence of causation, timing matters. Based on the Amended Complaint, the Court can deduce that Ms. Perry learned that Ms. Johnson had been promoted to a store manager position sometime in mid-January 2023. (Compare id. ¶ 38 ("Plaintiff's FMLA leave was to start on December 12, 2022") with id. ¶ 61 ("Approximately five weeks into her leave period, Werfel texted Plaintiff to tell her that Aaliyah Johnson, one of Plaintiff's trainees, was being promoted to store manager.")). However, Ms. Perry could have requested a leave of absence as early as the "summer of 2022." (Id. ¶ 34). Therefore, the span of time between engaging in protected activity—*i.e.*, requesting leave for her disability—and not being promoted could be as much as seven (7) months. Based on Sixth Circuit precedent, a plaintiff cannot rely on temporal proximity alone to establish causation if the span between the protected activity and the adverse employment action is greater than ten weeks. Stein v. Atlas Indus., Inc., 730 F. App'x 313, 319 (6th Cir. 2018). Therefore, Ms. Perry has also failed to plead sufficient facts to establish the fourth element of an ADA retaliation claim.

### B. FMLA Claims

#### 1. Interference Claim

"Congress made it unlawful for an employer to 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided' by the Act." Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1122 (9th Cir. 2001) (quoting 29 U.S.C. § 2615(a)(1)). To prevail on an interference (or entitlement) claim, an employee must prove that: "(1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to

leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled." Edgar v. JAC Prods., Inc., 443 F.3d 501, 507 (6th Cir. 2006). Ms. Perry concedes that she took her FMLA leave, as requested. (Doc. No. 15 ¶¶ 60-61). She also concedes that Sephora would have allowed her to return to work based on the same conditions that existed before she took leave. (Id. ¶ 63). Thus, it appears the only basis for Ms. Perry's interference claim is that Ms. Werfel texted her while she was on FMLA leave to tell her that Ms. Johnson had been promoted to store manager. (Doc. No. 15 ¶ 61).

Although it is unclear why Ms. Werfel texted Ms. Perry while she was on leave, it was a single instance of contact. (Id.). It also seems the text message was more personal in nature. Sephora had no obvious business need for Ms. Werfel to text Ms. Perry while she was on leave; therefore, the text may well have been motivated by Ms. Werfel's personal distaste for Ms. Perry. Regardless, even if Sephora's business interests motivated the text, an employer "can engage in *de minimis* contact with the employee on leave without violating their FMLA rights." Blank v. Nationwide Corp., No. 20-3969, 2021 WL 3469187, at *6 (6th Cir. Aug. 6, 2021); Groening v. Glen Lake Cmty. Sch., 884 F.3d 626, 632 (6th Cir. 2018) (employer's single contact with employee to request a breakdown of her time off was not actionable FMLA interference); Reilly v. Revlon, Inc., 620 F. Supp. 2d 524, 537 (S.D.N.Y. 2009) ("[f]ielding occasional calls about one's job while on leave is a professional courtesy that does not abrogate or interfere with the exercise of an employee's FMLA rights."). FMLA interference usually requires "multiple phone calls from an employer" or "demands to complete more than simple tasks." See Tilley v. Kalamazoo County Road Commission, 654 F. App'x 675, 680 (6th Cir. 2016). These more extensive contacts by an employer can "unjustifiably disrupt[] and thereby discourage[]" the employee from using her

FMLA leave.  Id.  Unfortunately for Ms. Perry, she has not alleged that Sephora contacted her repeatedly or asked her to perform intensive tasks.  Because Ms. Werfel only texted Ms. Perry once during her FMLA leave and she did not ask Ms. Perry to perform any work-related functions, Ms. Perry's allegations fall short of establishing FMLA interference.

### 2. Retaliation Claim

A plaintiff can make out a *prima facie* case of FMLA retaliation (or discrimination) by showing that: "(1) she availed herself of a protected right under the FMLA, (2) she suffered an adverse employment action, and (3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action."  Edgar, 443 F.3d at 508. Unfortunately for her, Ms. Perry's FMLA retaliation claim suffers from the same infirmities as her ADA retaliation claim.  It too must be dismissed for the reasons discussed above.  See supra (III)(A)(4).

## IV.  CONCLUSION

On the paper-thin and vague allegations in the Amended Complaint, which suggest little more than a personality conflict between Ms. Perry and her supervisors, Ms. Perry has not sufficiently pleaded ADA failure-to-accommodate, discrimination, hostile-work environment, or retaliation claims.  She also fails to plead FMLA interference and retaliation claims.  Accordingly, her claims must be dismissed.

An appropriate order will issue.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE